UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN EDWARD SWINSON, | ) | CIVIL ACTION NO. 4:21-CV-11 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

I.    INTRODUCTION

Plaintiff Jonathan Edward Swinson, an adult individual who resides in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly the Commissioner's final decision will be VACATED.

Page 1 of 23

## II.     BACKGROUND & PROCEDURAL HISTORY

On January 23, 2019, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 15).   In these applications, Plaintiff alleged he became disabled on September 25, 2018. During his second administrative hearing, Plaintiff amended his onset date to January 23, 2019, when he was forty-four years old. Plaintiff alleges he is disabled because of the following conditions: depression, hypertension, joint and back pain, fibromyalgia, plantar fasciitis, and high blood pressure. (Admin. Tr. 254). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, kneel, talk, climb stairs, complete tasks, and concentrate. (Admin. Tr. 289). Plaintiff alleges his impairments also affect his memory. *Id.*   Plaintiff has at least a high school education. (Admin. Tr. 26). Before the onset of his impairments, Plaintiff worked as: a laborer, stores, DOT #922.687-058; and automobile dealer, DOT #915.687-034. (Admin. Tr. 26).

On April 22, 2019, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 15). On July 31, 2019, Plaintiff's applications were denied at the reconsideration level. *Id.* On October 12, 2019, Plaintiff requested an administrative hearing. *Id.*

On May 27, 2020, and August 24, 2020, Plaintiff testified during a telephone hearings before Administrative Law Judge Scott M. Staller (the "ALJ"). *Id*. Plaintiff was represented by counsel during the second administrative hearing. On September 9, 2020, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 27). On September 21, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 212).

On December 1, 2020, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1).

On January 4, 2021, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1, ¶18). As relief, Plaintiff requests that the Court reverse the ALJ's decision and award benefits. (Doc. 1).

On July 6, 2021, the Commissioner filed an Answer. (Doc. 17). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 17, ¶ 10). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 18).

Plaintiff's Brief (Doc. 23), and the Commissioner's Brief (Doc. 24) have been filed.  Plaintiff did not file a reply. This matter is ready to decide.

III.   STANDARDS OF REVIEW

A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not

Page 4 of 23

prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP
SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a
claimant must demonstrate an inability to "engage in any substantial gainful activity
by reason of any medically determinable physical or mental impairment which can
be expected to result in death or which has lasted or can be expected to last for a
continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C.
§ 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[1] To
satisfy this requirement, a claimant must have a severe physical or mental
impairment that makes it impossible to do his or her previous work or any other
substantial gainful activity that exists in the national economy. 42 U.S.C. §
423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. §
416.905(a). To receive benefits under Title II of the Social Security Act, a claimant
must show that he or she contributed to the insurance program, is under retirement
age, and became disabled prior to the date on which he or she was last insured. 42
U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a
five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. §

---

[1] Throughout this Opinion, I cite to the version of the administrative rulings and
regulations that were in effect on the date the Commissioner's final decision was

416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

---

issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on September 9, 2020.

him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5);

42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference);

20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.  Once this

burden has been met by the claimant, it shifts to the Commissioner at step five to

show that jobs exist in significant number in the national economy that the claimant

could perform that are consistent with the claimant's age, education, work

experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3);

*Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive

requisites. Most significant among these legal benchmarks is a requirement that the

ALJ adequately explain the legal and factual basis for this disability determination.

Thus, to facilitate review of the decision under the substantial evidence standard, the

ALJ's decision must be accompanied by "a clear and satisfactory explication of the

basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts

in the evidence must be resolved and the ALJ must indicate which evidence was

accepted, which evidence was rejected, and the reasons for rejecting certain

evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which

evidence he has rejected and which he is relying on as the basis for his finding."

*Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

Page 8 of 23

IV.   DISCUSSION

Plaintiff raises the following issues in his statement of errors:

(1)    Whether the Administrative Law Judge erred and abused his discretion by failing to consider the limitations from Plaintiff's rheumatoid arthritis, psoriatic arthritis, fibromyalgia and morbid obesity, in setting forth Plaintiff's residual functional capacity.

(2)    Whether the Administrative Law Judge erred and abused his discretion in failing to consider the limitations from Plaintiff's diagnosed and treated migraine headaches, vertigo, chronic venous insufficiency, post-concussive syndrome, short-term memory loss, depression and anxiety, as the Administrative Law Judge improperly determined these disorders to be non-severe.

(3)    Whether the Administrative Law Judge erred and abused his discretion in failing to afford proper weight to opinions from treating sources, as compared to the opinions from the State Agency Consultants.

(Doc. 23, pp. 1-2).

A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his September 2020 decision, the ALJ found that Plaintiff meets the insured status requirement of Title II of the Social Security Act through March 31, 2024. (Admin. Tr. 17). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between January 23, 2019, (Plaintiff's amended alleged onset

date), and September 9, 2020, (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 17).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: rheumatoid arthritis, psoriatic arthritis, fibromyalgia, and morbid obesity. (Admin. Tr. 17-18). The ALJ also identified the following medically determinable non-severe impairments: history of plantar fasciitis, migraine headaches, vertigo, asthma, depressive disorder, cognitive impairment, and post-concussive syndrome. (Admin. Tr. 17-19).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 20).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except that:

> the claimant can stand and/or walk for four hours in an eight-hour workday. The claimant can frequently reach, handle, finger, and feel with his bilateral upper extremities. He can occasionally climb, balance, stoop, kneel, crouch or crawl. The claimant can operate foot controls with his bilateral lower extremities. The claimant can have frequent exposure to dust, fumes, gases, odors, poor ventilation and other pulmonary irritants.

(Admin. Tr. 21).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 26).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 26-27). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: information clerk, DOT #237.367-018; assembler, electrical accessories, DOT #729.687-010; and mail clerk, DOT #209.687-026. (Admin. Tr. 27).

B.   WHETHER THE ALJ FAILED TO CONSIDER PLAINTIFF'S TESTIMONY WHEN HE MADE THE RFC ASSESSMENT

During his administrative hearing, Plaintiff testified that his diagnosed conditions of osteoarthritis, inflammatory arthritis, and psoriatic arthritis affect all of his joints and that his body is "pretty much always on fire." (Admin. Tr. 46). He reported that he could stand for five minutes at a time, walk up to 50 feet before he needed a break, and walk for up to 12 minutes at a time. *Id.*

Due to the swelling in his feet, Plaintiff has difficulty wearing shoes, and usually wears sandals even in the winter. *Id.* He typically elevates his legs "all day," and has been prescribed medication to help reduce the swelling. (Admin. Tr. 47).

Page 11 of 23

Plaintiff did try to use compression bandages to manage his symptoms, but this method was not effective. (Admin. Tr. 52). He testified that any physical activity makes the swelling worse. As an example, he said that if he helps put away groceries for ten minutes, his hands and feet begin to swell. (Admin. Tr. 50).

Plaintiff also reported numbness and tingling in his arms and legs. He reported that this symptom makes it difficult for him to grip objects, move things, and lift things. (Admin. Tr. 55).

Plaintiff testified that, in addition to the medication to address his swollen legs and feet, he is also prescribed allergy and blood pressure medication. (Admin. Tr. 48). He reported that his medication regimen causes headaches and makes it difficult for him to sleep. *Id.* Plaintiff testified that he sleeps four hours each night, but then falls asleep during the day. (Admin. Tr. 48).

In terms of his daily activities, Plaintiff is able to dress himself, and can bathe himself with the use of a shower chair. (Admin. Tr. 48). He does not cook, wash dishes, do laundry, take out the trash, mow the lawn or do any gardening. (Admin. Tr. 49). He testified that he cannot vacuum. *Id.* Plaintiff reported that his teenaged children do many of the chores around the house. *Id.*

The ALJ provided the following summary of Plaintiff's statements about his symptoms:

> The claimant asserts that his conditions limit his ability to work. He
> asserts that his conditions cause swelling in his shins, ankles, and feet
> (Exhibit B5E). He further asserts that his conditions impact his ability
> to sleep, specifically noting irregular sleep patterns of increased and
> decreased sleep (Exhibit B5E at 3). The claimant indicates his
> conditions impact his ability to lift, squat, bend, stand, reach, walk for
> more than ten minutes, kneel, talk, and climb stairs (Exhibit B5E). He
> indicates that he takes medications to treat his conditions, which causes
> side effects of pain, weight gain, swelling, dizziness, nausea and fatigue
> (Exhibit B5E).

(Admin. Tr. 22). This summary references only a function report questionnaire that

Plaintiff completed in March of 2019. (Admin. Tr. 284-291). The ALJ does not

mention or summarize Plaintiff's hearing testimony at any point in the decision.

In his decision, the ALJ found that, Plaintiff's conditions were not as

debilitating as Plaintiff alleged. In doing so, the ALJ summarized Plaintiff's

treatment records, and explained:

> While the claimant asserts that his conditions prevents [sic] him from
> engaging in substantial gainful activity, the undersigned finds that the
> claimant's conditions are not as debilitating as alleged. While the record
> shows that the claimant experienced edema in his lower extremities,
> treatment records generally indicate that the claimant maintained a
> normal gait and stance (Exhibit B5F; B11F). Despite the claimant's
> subjective reports of symptoms of pain, numbness, and tingling in his
> extremities and treatment records that noted edema, examinations
> generally indicated he maintained five out of five strength in his upper
> and lower extremities (Exhibit B5F; B11F). Similarly, the claimant's
> activities of daily living establish that the claimant's conditions are not
> as debilitating as alleged. The claimant is able to care for his personal
> needs and grooming, including his ability to dress, bathe, care for his
> hair, shave, feed himself, and use the bathroom (Exhibit B5E). The
> claimant is also able to care for his children, including dropping them

off and picking them up from the bus stop (Exhibit B5E). The claimant can prepare simple meals on a daily basis (Exhibit B5E). He can also assist with housework, including doing the laundry and vacuuming (Exhibit B5E). The claimant is able to go outside alone and can operate a motor vehicle (Exhibit B5E). He is also able to shop in stores (Exhibit B5E).

(Admin. Tr. 23-24).

The Commissioner's regulations define "symptoms" as the claimant's own description of his or her impairment. 20 C.F.R. § 404.1502(i); 20 C.F.R. § 416.902(i). The ALJ is not only permitted, but also required, to evaluate a claimant's statements about all symptoms alleged and must decide whether and to what extent a claimant's description of his or her impairments are credibly established. In many cases, this determination has a significant impact upon the outcome of a claimant's application, because the ALJ need only account for those symptoms – and the resulting limitations – that are credibly established when formulating his or her RFC assessment. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). To facilitate this difficult analysis, the Commissioner has devised a two-step process that must be undertaken by the ALJ to evaluate a claimant's statements about his or her symptoms.

First, the ALJ must consider whether there is an underlying medically determinable impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the

symptom alleged. 20 C.F.R. § 404.1529(b); 20 C.F.R. § 416.929(b). If there is no medically determinable impairment that could reasonably produce the symptom alleged, the symptom cannot be found to affect the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(b); 20 C.F.R. § 416.929(b); SSR 16-3p, 2016 WL 1119029.

Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms which can be reasonably attributed to a medically determinable impairment. 20 C.F.R. § 404.1529(c)(1); 20 C.F.R. § 416.929(c)(1). Symptoms will be determined to reduce a claimant's functional capacity only to the extent that the alleged limitations and restrictions can reasonably be accepted as consistent with objective medical evidence and other evidence of record. 20 C.F.R. § 404.1529(c)(4); 20 C.F.R. § 416.929(c)(4). However, an ALJ will not reject statements about the intensity, persistence, or limiting effects of a symptom solely because it is not substantiated by objective evidence. 20 C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3). Instead, the ALJ will evaluate the extent to which any unsubstantiated symptoms can be credited based on the following factors: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; any factor that precipitates or aggravates the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects

of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms; any treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms; any measures the claimant uses or has used to relieve his or her pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and any other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3).

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness's demeanor and credibility. *Frazier v. Apfel*, No. 99-CV-715, 2000 WL 288246, at *9 (E.D. Pa. Mar. 7, 2000) (*quoting Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). An ALJ is not free to discount a claimant's statements about his or her symptoms or limitations for no reason or for the wrong reason. *Rutherford*, 399 F.3d at 554.

Plaintiff argues that the ALJ ignored Plaintiff's hearing testimony. Specifically, Plaintiff contends:

> The RFC set forth by the ALJ limited Claimant to light work, with additional limitations that did not accurately set forth all of the limitations from Claimant's severe impairments. (Admin Tr. 21-25). Despite evidence of regarding some issues with pain, concentration and focus due to both mental and physical-health related issues, the RFC from the ALJ contains no non-exertional limitations, and despite

multiple severe physical impairments, is lacking in sufficient exertional limitations, as will be discussed and highlighted below. (Admin Tr. 21-25). The ALJ failed to consider the record of this claim as a whole, as he focused almost solely on treatment notes which support his determination regarding Claimant's RFC.

In the instant matter, as it relates to Claimant's severe impairments the medical records establish the following limitations and impairments: (1) bilateral foot pain and leg swelling, (2) diagnostic evidence of peripheral venous insufficiency, (3) moderate to severe pain and swelling, including hands, (4) increased pain with activity, (5) prolonged morning stiffness, (6) radiating back pain, (7) burning numbness with rashes, and (8) fatigue, shortness of breath and trouble walking. (Admin Tr. 355, 359, 378, 387, 433, 503, 508, 564, 581, 598, 660, 667, 674, 680, 728, 762, 811-812, and 833).

Claimant's testimony confirmed the following limitations and related impairments: (1) pain, swelling and neuropathy, all worse with activity, (2) limited sitting/standing/walking, (3) edema which is only resolved by elevating his legs as recommended by his doctors, (4) trouble sleeping due to pain and racing thoughts, (5) the worst pain and swelling in his hands and lower extremities, (6) he can only sit 10 to 15 minutes before his feet and legs swell up and get painful, (7) daily numbness and tingling in his arms and legs from the neuropathy, and (8) he gets up and moves around after sitting for 10 to 15 minutes. (Admin Tr. 43-56). These disorders and related issues, which are verified by both Claimant and the medical record, should not have been ignored by the ALJ in terms of Claimant's limitations in his RFC, as there is no evidence in the record to contradict the fact that Claimant actually experiences what he alleges on a daily basis as a result of multiple severe impairments.

The ALJ failed to adequately consider the impact of Claimant's documented issues with pain, from multiple chronic and incurable severe physical impairments, as follows: (1) chronic bilateral foot pain, (2) chronic reoccurring migraine headaches, with vertigo and dizziness, (3) pain flareups with leg swelling, (4) swelling and pain in the legs while sitting, (5) worsening chronic venous insufficiency, (6) missing

2 or 3 days of work, every 6 weeks due to leg pain, (7) spending a lot of time in a recliner due to pain, (8) testing confirming inflammatory poly-arthritis, (9) moderate to severe joint pain and swelling, down from the back and into the legs and knees, (10) findings of positive SLR bilaterally and reduced strength, (11) a brain MRI confirming a micro-hemorrhage in the right frontal region, (12) morning stiffness, (13) numbness and tingling in the arms and legs, (14) paresthesias in his fingers and toes, and (15) worsening leg pain and swelling despite wrapping his legs and using compression stockings. (Admin Tr. 354-361, 374, 432, 489, 576-579, 589, 614, 642-643, 705 and 745). The ALJ also did not properly consider Claimant's multiple issues involving his legs, including pain, swelling, numbness and tingling, in combination with the issues regarding his toes, and the impact upon his ability to walk/stand/sit, particularly as it relates to his need to elevate his legs (as recommended by his physicians).

The ALJ further erred and abused his discretion in setting forth Claimant's RFC, as he failed to include a sit/stand option, which is necessitated by Claimant's pain-related disorders, and as he failed to include periods of Claimant needing to walk away from his work stating multiple times per hour during an 8 hour workday, which, per the VE, would render Claimant incapable of working. (Admin Tr. 61-64). The ALJ should have, at the very least, included additional unscheduled break time Claimant would need and require on a daily basis to deal with multiple complaints and area of pain, which worsen with activity, and would also render Claimant unemployable. (Admin Tr. 62-63). In addition, if the Claimant were to elevate his legs at waist level for even one to two hours per day (which is reasonable given his severe leg edema), he would be unemployable per the VE. (Admin Tr. 63-64). Finally, the ALJ erred by failing to consider the issues and limitations Claimant had in his last job before he stopped working due to his medical conditions, during which period of time he was missing work 2-3 times every 6 weeks, and the overall impact upon his employability over time. (Admin Tr. 41-42, 50-52, 365-366 and 387).

Based upon the above, the RFC from the ALJ is deficient, as it does not include, nor does it account for, limitations supported by the record in this matter.

(Doc. 23, pp. 12-18) (internal footnote omitted) (emphasis added).

In response, the Commissioner argues that the ALJ's decision, read as a whole, demonstrates that the ALJ thoroughly evaluated the evidence of record and included all of Plaintiff's credibly established limitations in the RFC. Specifically, the Commissioner contends:

> The ALJ's decision, read as a whole, demonstrates that the ALJ thoroughly evaluated the evidence of record and included all of Plaintiff's credibly-established functional limitations in the RFC. Thus, Plaintiff's argument that the ALJ "failed to consider the limtiations [sic] from [his] rheumatoid arthritis, psoriatic arthritis, fibromyalgia, and morbid obesity" (Pl.'s Br. at 12-18) is without merit.
>
> The ALJ discussed that:
>
> - At the consultative examination, Plaintiff exhibited normal gait and stance, could walk on his heels and toes without difficulty, and did not require the use of an assistive device to ambulate, could perform a squat to 50% of full, had full (5/5) strength in his upper and lower extremities and grip and had intact hand and finger dexterity (Tr. 22, 414-15);
>
> - In September 2019, Plaintiff had a normal gait and normal proximal and distal strength (Tr. 22, 616);
>
> - The next month, he again had a normal gait and normal strength in his bilateral upper and lower extremities (Tr. 22, 590);
>
> - Plaintiff was able to still get around and perform his activities of daily living (Tr. 22, 598);
>
> - In November 2019, Plaintiff had a stiff gait and tender lumbar spine with only a mild limitation of motion, a negative straight leg raise and maintained normal proximal and distal

strength, and he was advised to begin physical therapy, which he began in January 2020 (Tr. 23, 571, 583);

- In February 2020, Plaintiff did not have swelling in his bilateral lower extremities (Tr. 23, 657);

- In July 2020, Plaintiff ambulated with an antalgic gait and had a poor heel and toe walk with edema in his wrists, hands, legs, ankles, and feet, but continued to exhibit full strength (Tr. 23, 706);

- Plaintiff was also counseled on the need for a healthy diet in light of his obesity (Tr. 23, 729, 827); and

- The consultative examiner opined that Plaintiff could occasionally lift up to 100 pounds; stand for four hours and walk for two hours in an eight-hour workday; frequently balance; occasionally operate foot controls bilaterally and climb stairs, ramps, ladders, or scaffolds; frequently operate a motor vehicle; and occasionally be exposed to unprotected heights (Tr. 24, 419-24).

While Plaintiff asserted that his conditions prevented him from engaging in substantial gainful activity, the ALJ's finding that his conditions are not as debilitating as alleged was supported by more than a mere scintilla of evidence. Specifically, despite Plaintiff's subjective reports of symptoms of pain, numbness, and tingling in his extremities and treatment records that noted edema, examinations generally indicated he maintained five out of five strength in his upper and lower extremities and generally indicate that the claimant maintained a normal gait and stance. *See Dixon v. Comm'r of Soc. Sec.*, 183 F. App'x 248 (3d Cir. 2006) (approving of the ALJ's analysis finding that the medical exhibit demonstrated normal physical findings and noting there existed no atrophy suggesting an inability to perform sedentary work). Additionally, the ALJ found that Plaintiff's activities of daily living establish that his conditions are not as debilitating as alleged. More than a mere scintilla of evidence supports this conclusion. Because Plaintiff

has failed to meet his burden to show that further limitations were warranted, the Court should affirm.

With respect to Plaintiff's claim that the ALJ erred in not fully considering his need to take unscheduled breaks, his ability to remain on task, or his expected absenteeism (Pl.'s Br. at 20, 24), Plaintiff has provided no citation to evidence in the record apart from the unpersuasive checkbox opinions from his providers (as fully discussed infra) to support this argument. *Woodson*, 661 F. App'x at 765-66 (finding that, to explain how a perceived error was harmful, a plaintiff must "affirmatively point to specific evidence that demonstrates he should succeed."). Accordingly, this argument should be rejected.

Significantly, the ALJ recognized that Plaintiff had some limitations, but reasonably found that they were not work-preclusive. Additionally, the RFC assessment credited Plaintiff's subjective complaints to the extent that he could not perform his past relevant work (Tr. 21). But, Plaintiff has not pointed to evidence of limitations as would compel a finding that greater limitations were warranted. *See* SSR 96-8p, 1996 WL 374184 at *1 ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms.") (emphasis added); *Elias-Zacarias*, 502 U.S. at 481 n.1; *Woodson*, 661 F. App'x at 765-66. *See also Trostle v. Astrue*, 2009 WL 1648908, at *4 (W.D. Pa. June 10, 2009) (affirming the ALJ's decision where the claimant did not identify any specific limitation supported by the evidence that the ALJ did not include in the RFC assessment, which was supported by substantial evidence); *Sharp v. Astrue*, No. 02-0910, 2011 WL 4351616 at *5 (W.D. Pa. Sept. 16, 2011) ("While Plaintiff may not have enjoyed complete relief of her symptoms, Plaintiff fails to illustrate how her remaining limitations were not adequately accommodated in the ALJ's hypothetical to the vocational expert.").

More than a mere scintilla of evidence supports the RFC assessment. *Biestek*, 139 S.Ct. at 1154. Accordingly, the Court should affirm.

(Doc. 24, pp. 12-16).

Plaintiff frames this argument as a challenge to the ALJ's RFC assessment, however upon close scrutiny the argument itself challenges the ALJ's evaluation of Plaintiff's hearing testimony. The ALJ did not summarize or otherwise discuss Plaintiff's testimony in a meaningful way in the decision. Instead, the ALJ's discussion of Plaintiff's statements is limited to a check-box adult function report questionnaire submitted in March 2019—more than one year before the hearing occurred and before Plaintiff was diagnosed with the medically determinable impairments of arthritis and fibromyalgia at issue in this case. (Admin. Tr. 291) (explaining that Plaintiff is waiting for an appointment with a Rheumatologist and that his family doctor "can't figure out what is wrong").

While some of the statements in the check-box adult function report questionnaire are duplicative of Plaintiff's hearing testimony, others are not. For example, in his hearing testimony Plaintiff testified that he cannot stand for more than five minutes, while in the questionnaire he reports he cannot stand more than two hours. Plaintiff's testimony also describes the nature and extent of his pain in more detail, as well as the nature and extent of his swelling and methods he uses to manage that symptom. Because no explanation was provided, the Court cannot determine if the ALJ's rationale for discounting Plaintiff's statements is proper and is supported by substantial evidence. Although it seems likely that the ALJ did

consider the hearing testimony, because he did not *explain* why and to what extent it was discounted I am compelled to remand in this case.

###### C.   PLAINTIFF'S REMAINING ARGUMENTS

In his brief, Plaintiff also argues that the ALJ failed to address his hearing testimony about the limitations caused by his medically determinable non-severe impairments, and did not properly weigh the medical opinions of two sources—CRNP Chang and Dr. Albano-Aluquin. To the extent any further error exists, it can be addressed on remand.

## V.   CONCLUSION

Accordingly, I find that that Plaintiff's request for relief will be GRANTED as follows:

(1)   The final decision of the Commissioner will be VACATED.

(2)   This case will be REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

(3)   Final judgment will be issued in favor of Jonathan Edward Swinson.

(4)   An appropriate order will be issued.

Date: September 9, 2022                    BY THE COURT

                                           *s/William I. Arbuckle*
                                           William I. Arbuckle
                                           U.S. Magistrate Judge